# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Euell*, 2012 IL App (2d) 101130

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CENECA L. EUELL, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-1130 |
| Filed | May 16, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In upholding defendant's conviction for unlawful delivery of a controlled substance, the appellate court rejected defendant's contentions that the trial court failed to comply with Supreme Court Rule 431(b) during *voir dire* and that the State's rebuttal closing argument was improper, since defendant waived both issues and failed to establish that any error was reversible under the plain-error doctrine. |
| Decision Under Review | Appeal from the Circuit Court of Stephenson County, No. 10-CF-47; the Hon. Michael P. Bald, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas A. Lilien and Christopher McCoy, both of State Appellate Defender's Office, of Elgin, for appellant.

John H. Vogt, State's Attorney, of Freeport (Lawrence M. Bauer and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices Hutchinson and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1        Following a jury trial, defendant, Ceneca L. Euell, was found guilty of unlawful delivery of a controlled substance (720 ILCS 570/401(a)(2)(A) (West 2008)) and was sentenced to nine years' imprisonment. On appeal, defendant contends that (1) the trial court failed to comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) during *voir dire*, and (2) the State made improper remarks during its rebuttal closing argument. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3        At trial, Officer Aaron Dykema of the Freeport police department gave the following testimony. In the summer of 2009, he was a member of the Stateline Area Narcotics Team (SLANT). During that time, SLANT employed David Grissom, a civilian, to help with narcotics investigations, and Grissom had been working with SLANT since approximately May 2009. On July 24, 2009, Dykema, along with Inspector Robyn Stovall, met with Grissom prior to a planned narcotics deal with defendant. Dykema searched Grissom to make sure that he did not possess any contraband or money. Dykema did not find any contraband or money on Grissom. Dykema gave Grissom $800 to finance the transaction with defendant, and Grissom was fitted with a hidden video and audio recorder. Grissom then proceeded to the area of Cherry Avenue and Elk Street. Dykema and Stovall followed Grissom until he reached the area where Inspector Scott A. Ellefson took over the surveillance. Once Ellefson took over, Dykema was no longer able to see Grissom's actions. After the transaction, Grissom left the area and Dykema was able to pick up surveillance for a period of time until Ellefson was directed to pick up Grissom. Dykema met up with Grissom at the city cemetery. Grissom handed Dykema a plastic baggie containing a substance suspected to be cocaine. Dykema searched him again and did not find any other contraband or money on him. Dykema identified defendant as the passenger of the vehicle seen in the video taken by the camera that Grissom wore during the transaction.

¶ 4      Stovall's testimony was consistent with the testimony given by Dykema. In addition, she testified that Grissom was paid a flat amount for each completed deal in which he participated. She did not recall the specific amount that Grissom was paid.

¶ 5      Ellefson testified as follows. He was a deputy with the Green County sheriff's department in Wisconsin. On July 24, 2009, as part of his duties with SLANT, he was assisting in the investigation of defendant. He was working as a surveillance officer and was stationed on Elk Street, halfway between Walnut and Cherry Avenues. Ellefson observed Grissom walking west on Elk Street from Cherry Avenue to a residence about halfway down the block. While Grissom was at the residence, Ellefson was in an SUV approximately 20 feet away from him. Ellefson watched Grissom stand outside the residence for a period of time until a silver car pulled up to Grissom. Grissom walked up to the passenger side of the vehicle and appeared to be talking with whoever was in the vehicle. Ellefson was unable to see who was in the vehicle. After a few seconds, Grissom walked away from the vehicle and the vehicle drove away. Grissom proceeded down the road, and Ellefson watched him until he was out of view. At that point, other officers took over surveillance. Ellefson was then directed to pick up Grissom, which he did. Ellefson brought Grissom back to Dykema. While Grissom was under Ellefson's surveillance, he never met with anyone other than whoever was in the silver vehicle. Ellefson videotaped his surveillance of Grissom once the silver car pulled up to the scene.

¶ 6      Edward Rottman of the Illinois State Police crime laboratory testified that he found no fingerprints suitable for comparison on the plastic baggie that Grissom turned over to Dykema after his meeting with defendant.

¶ 7      Barbara Schuman of the Illinois State Police crime laboratory testified that the white substance in the baggie that Grissom turned over to Dykema was 19.1 grams of cocaine.

¶ 8      Grissom gave the following testimony at trial. He had two convictions of possessing a controlled substance and a conviction of theft of over $300. At the time of trial, he was incarcerated on a misdemeanor battery conviction. In 2009 he was working with SLANT in drug investigations and was paid for his participation in drug buys. Although the battery charge was pending when he was working with SLANT, he did not receive any promises regarding the charge in exchange for working with SLANT. On July 24, 2009, he assisted Dykema with the purchase of drugs from defendant. Prior to meeting with defendant, Grissom met Dykema and Stovall in a MetLife parking lot. While there, he was equipped with a wire and a camera, searched, and given $800 to purchase drugs. In addition, he called defendant to arrange the purchase of an ounce of cocaine. Grissom then walked to where he was to meet defendant, in front of his friend's house on Elk Street between Cherry and Walnut Avenues. When he arrived at the house, Grissom knocked on the door, but no one answered. Grissom had to wait approximately 15 to 20 minutes before defendant arrived. When defendant arrived, he was the passenger in the vehicle. Grissom approached the vehicle, and defendant told him that the drugs were in the door. Grissom threw the money into the car, took the drugs out of the door, and talked briefly with defendant before the vehicle drove away. Because he thought that defendant might circle the block, Grissom then walked back along the side of his friend's house, looked around the corner, walked up the street a bit, tied his shoes, and then resumed walking up the street. On his way, he was picked

up by another officer and driven back to Dykema's location. Once with Dykema, he turned over to Dykema the drugs he obtained from defendant. Dykema then searched him and gave him $100 for his participation.

¶ 9    The video and audio recording obtained from the devices that Grissom was equipped with during the transaction was admitted into evidence. On the recording, while Grissom walks to meet defendant, he can be heard on the phone talking to several people. He does not, however, encounter anyone on his way to the location. Once at the house, he walks to the door on the side of the house and knocks. No one answers and he proceeds to the front of the house, where he has a phone conversation. He then sits on the front steps of the house for a while. On a couple of occasions, he walks to the side of the house but does not encounter anyone. At one point, he yells across the street to someone. He also speaks with the next-door neighbor. At no point does he get within arm's length of either of these people. When defendant pulls up in the vehicle, Grissom walks up to the passenger side and has a brief discussion with defendant, but the discussion is indecipherable. Grissom's hand reaches down into the car, but the exchange of money and drugs cannot be seen. After Grissom leaves the vehicle and it drives away, Grissom walks back to the side door of the house, knocks twice, and waits a couple of seconds before walking away. Grissom loiters in front of the house for a minute or two, looking around, before he heads up the street. He does not encounter anyone until he is picked up by Ellefson.

¶ 10    The surveillance video taken by Ellefson was also admitted into evidence. In it, Grissom can be seen approaching the passenger side of a silver sedan. Grissom leans through the passenger window for a few seconds before the vehicle drives away. No one else approaches the vehicle or Grissom.

¶ 11    The jury found defendant guilty. Following an unsuccessful motion for a new trial, the trial court sentenced defendant to nine years' imprisonment, and defendant brought this timely appeal.

¶ 12                                    ANALYSIS

¶ 13    On appeal, defendant argues that (1) the trial court failed to comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) during *voir dire*, and (2) the State made improper remarks during its rebuttal closing argument.

¶ 14    Defendant first contends that the trial court failed to comply with Rule 431(b) when it questioned the potential jurors about their understanding and acceptance of the four Rule 431(b) principles in a single broad question, rather than asking the potential jurors about their understanding and acceptance of each of the principles separately. Defendant did not, however, object during *voir dire*, nor did he raise the issue in his written posttrial motion. Accordingly, defendant has forfeited review of this issue. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) ("*Both* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphases in original.)).

¶ 15    Acknowledging that he failed to preserve this issue for review, defendant urges us to review the issue under the plain-error doctrine. Under the plain-error doctrine, we may review a forfeited error when either (1) "the evidence in a case is so closely balanced that the

jury's guilty verdict may have resulted from the error and not the evidence" or (2) "the error is so serious that the defendant was denied a substantial right, and thus a fair trial." *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). Defendant bears the burden of persuasion under both prongs. *Herron*, 215 Ill. 2d at 187.

¶ 16        Even assuming, as defendant argues, that the trial court erred in its questioning of the potential jurors regarding their understanding and acceptance of the four Rule 431(b) principles, we conclude that defendant has failed to carry his burden under the plain-error doctrine. Defendant argues only the first prong of plain error, asserting that the evidence is closely balanced because the videos do not show an exchange of drugs for money, no mention of drugs or money can be heard, and defendant's fingerprints were not found on the baggie. Thus, according to defendant, defendant's guilt revolves solely around Grissom's credibility, which was questionable given his criminal history and financial incentive to complete the buy. Defendant also argues that Grissom's credibility was questionable because he twice knocked on the door of his friend's house, his arm blocked a portion of his camera's view while he was standing at the passenger side of the vehicle, and his hands could not be seen during several portions of the video. Thus, Grissom could have, according to defendant, gotten the drugs in a manner other than from defendant.

¶ 17        We disagree that the evidence is closely balanced, because, despite the fact that the exchange does not appear on video, Dykema searched Grissom before he went to meet defendant and Grissom did not have any contraband on him. When Grissom returned, he had 19.1 grams of cocaine. The video taken from the camera that Grissom wore confirms that, although he knocked on his friend's door, and his hands could not be seen at all times, he did not come in close contact with anyone besides defendant. Nor does the video depict Grissom picking up any objects from any other location. In addition, the video taken by Ellefson shows that, while Grissom was at the side of the vehicle, no one approached Grissom or the vehicle. Thus, despite Grissom's apparent credibility problems given his criminal history and financial incentive, the videos confirm his testimony and demonstrate that the only opportunity Grissom had to obtain the drugs he turned over to Dykema was when he came in contact with defendant. Accordingly, the evidence is not closely balanced, and any error by the trial court in questioning the prospective jurors regarding the Rule 431(b) principles is not reversible under the plain-error doctrine.

¶ 18        Defendant also argues that the State made improper arguments during its rebuttal closing argument. Initially, the State contends that defendant has forfeited this contention, because, although defendant raised it in his motion for a new trial, he did not enter a contemporaneous objection to the complained-of remarks. Defendant responds that he did object at trial in the form of a motion for mistrial after the State had completed its argument and the jury had been instructed and allowed to proceed to deliberations. We agree that defendant has forfeited this contention for failure to make a contemporaneous objection at trial. See *People v. McNeal*, 175 Ill. 2d 335, 364 (1997); *People v. Rivera*, 277 Ill. App. 3d 811, 820-21 (1996) (reviewing the prosecutor's closing argument under the plain-error doctrine because the defendant failed to register a contemporaneous objection, although he made a motion for mistrial).

¶ 19        Defendant also contends that, even if he has forfeited this contention, it nevertheless

-5-

satisfies the plain-error doctrine. According to defendant, the State's arguments were improper in that they shifted the burden of proof to defendant and directed the jury to disregard defendant's theory of the case by telling it to avoid speculation. Although we agree that some of the State's remarks improperly shifted the burden of proof to defendant, we conclude that defendant has failed to demonstrate that this error is reversible under the plain-error doctrine. In addition, we conclude that defendant has failed to establish that the State's comments regarding speculation were error at all.

¶ 20       During closing arguments, defense counsel contended that the State failed to prove defendant guilty beyond a reasonable doubt because the actual exchange of drugs for money did not appear on the videos, the evidence presented left open the possibility that Grissom obtained the drugs from a place or person that did not appear on the videos, and Grissom had motivation to lie in order to collect his payment from SLANT. In rebuttal, the State repeatedly argued that there was no evidence presented that supported defendant's theory. While such statements could be construed as proper argument regarding the credibility of defendant's theory in light of the evidence presented rather than improperly implying that defendant had a duty to present exculpatory evidence (see *People v. Glasper*, 234 Ill. 2d 173, 212 (2009)), other statements by the State did shift the burden of proof to defendant. Specifically, in response to defense counsel's argument that Grissom could have been attempting to frame defendant, the prosecutor stated that there was "no evidence of that from the defense standpoint." This statement, unlike the others, cannot be read as a statement that the defense's theory was not a reasonable inference based on the evidence presented; rather, it is a clear argument that the jury should not give credence to defendant's theory because defendant did not present any evidence in support of that theory. In addition, while discussing Grissom's possible motivation for framing defendant, the prosecutor stated, "He [defense counsel] had the opportunity to get into the part about why would he [Grissom] would want to frame this guy [defendant]? Why would he want to frame this guy? None of that." By commenting on the questions that defense counsel should have asked but did not, the State effectively shifted the burden to defendant to elicit exculpatory evidence. See *People v. Edgecombe*, 317 Ill. App. 3d 615, 622 (2000) (State's comment on the defense's failure to ask a witness the correct questions shifted the burden of proof to the defendant).

¶ 21       Although we have concluded that the State improperly shifted the burden of proof to defendant during closing arguments, we must also determine whether this error is reversible under the plain-error doctrine. Defendant contends that it is, both because the evidence is closely balanced and because the error denied him a fair trial. As we concluded above, the evidence is not closely balanced. In support of his contention that the State's burden-shifting remarks denied him a fair trial, defendant relies on *People v. Yonker*, 256 Ill. App. 3d 795 (1993). There, in finding reversible plain error, the court did say that to " 'misstate the burden of proof or standard of review, to any extent, compromises the fairness of the judicial process and shall not be tolerated.' " *Yonker*, 256 Ill. App. 3d at 799 (quoting *People v. Wilson*, 199 Ill. App. 3d 792, 797 (1990)). However, this statement in *Wilson*, and therefore *Yonker*, understates the defendant's burden to establish plain error. Indeed, as the *Yonker* court itself pointed out, "[i]mproper comment is plain error [only] when it is either so inflammatory that the defendant could not have received a fair trial or so flagrant as to

-6-

threaten a deterioration of the judicial process." *Yonker*, 256 Ill. App. 3d at 798 (citing *People v. Phillips*, 127 Ill. 2d 499, 524 (1989)). That standard is plainly inconsistent with the view that *any* misstatement of the burden of proof, to *any* extent, is plain error.

¶ 22    Our view is bolstered by the fact that, when a defendant *preserves* this issue for review, we may affirm if we deem the comments harmless beyond a reasonable doubt, reversing only "where the improper remarks resulted in substantial prejudice to the defendant's right to a fair trial." *Edgecombe*, 317 Ill. App. 3d at 623. In making this assessment, we look at the language used, its relation to the evidence, and the effect of the argument on the defendant's right to a fair trial. *People v. Adams*, 281 Ill. App. 3d 339, 345-46 (1996); see also *People v. Smith*, 402 Ill. App. 3d 538, 544 (2010) ("Although the prosecutor *** shifted the burden of proof, the prosecutor's improper closing remarks do not warrant reversal unless they could have affected the jury's verdict."). If we do not automatically reverse in light of a *preserved* misstatement of the burden of proof, certainly we may not automatically reverse in light of a *forfeited* one. Thus, here, in accordance with the plain-error rule, we will reverse only if the State's comments were so inflammatory or so flagrant that defendant was denied a fair trial. See *Phillips*, 127 Ill. 2d at 524. We conclude that they were not.

¶ 23    The State's comments were tied to the lack of evidence supporting defendant's theory that someone else delivered the drugs (a theory that was flatly refuted by the evidence presented). A prosecutor, of course, may comment that his case is uncontradicted. See *People v. Johnson*, 208 Ill. 2d 53, 112 (2003). To be sure, the State erred in noting that defendant had failed to support his theory. However, the State did not directly state that defendant had a burden to do so; thus, the clear upshot of the State's comments was that all the evidence pointed one way, and in that regard they were unassailably accurate. Accordingly, we hold that the comments were not so inflammatory or flagrant as to deny defendant a fair trial.

¶ 24    Finally, defendant's contention that he was denied a fair trial when the State told the jury to avoid engaging in speculation is without merit. During closing arguments, the State twice told the jury that it would receive an instruction that it should not engage in speculation and should make its decision based on only the evidence presented. On three other occasions during closing arguments, the State told the jury that it did not have to speculate or should avoid engaging in speculation. According to defendant, these comments were tantamount to directing the jury to disregard his theory of the case. In support, defendant cites *Glasper*, 234 Ill. 2d at 213, in which the supreme court held that the State erred in stating that the foreperson's job was " 'to keep everyone on track and confine what you talk about to the evidence and reasonable inferences to be drawn from the evidence, not wild theories.' " The court concluded that this comment was tantamount to directing the jury to disregard the defendant's theory of the case. *Glasper*, 234 Ill. 2d at 213. The court further concluded, however, that the error did not deprive the defendant of a fair trial, because the trial court properly instructed the jury on the proper role of the foreperson, the evidence that should be considered, and the proper nature of closing arguments. *Glasper*, 234 Ill. 2d at 213-14.

¶ 25    We conclude that the State's comments regarding the jury's engaging in speculation were not error. In *Glasper*, the State essentially instructed the foreperson to forbid any consideration of the defendant's theory. Here, however, despite defendant's contentions to the contrary, the State's comments that the jury should avoid engaging in speculation were

not directives to avoid considering defendant's theory of the case; rather, they were simply arguments that defendant's theory lacked support in the evidence and, for that reason, should not be given weight. See *Adams*, 281 Ill. App. 3d at 346 ("A prosecutor has the right to comment on the evidence, draw all legitimate inferences deducible from the evidence even if they are unfavorable to defendant, and comment on the credibility of the witnesses."). Further, the State's comments that the jury would receive an instruction that it should not engage in speculation and should make its decision based on only the evidence presented were not error, because the jury was, in fact, properly instructed that it should determine the facts from only the evidence presented. Accordingly, we conclude that the State's comments regarding speculation were not error, much less reversible error under the plain-error doctrine.

¶ 26                                   CONCLUSION

¶ 27      For the reasons stated, the judgment of the circuit court of Stephenson County is affirmed.

¶ 28      Affirmed.