# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*People v. Carbajal*, 2013 IL App (2d) 111018

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MIGUEL A. CARBAJAL, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-1018 |
| Filed | March 7, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for burglary of a school was reversed and the cause was remanded for a new trial, since the evidence concerning defendant's intent was closely balanced, and even though defense counsel waived any objection to the State's closing arguments, the arguments which misstated the law and shifted the burden of proof to defendant constituted plain error. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 11-CF-1925; the Hon. Daniel B. Shanes, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Thomas A. Lilien and Sherry R. Silvern, both of State Appellate Defender's Office, of Elgin, for appellant. |
|---|---|
| | Michael J. Waller, State's Attorney, of Waukegan (Lawrence M. Bauer and Scott Jacobson, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion. Justices Zenoff and Jorgensen concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a jury trial, defendant, Miguel A. Carbajal, was found guilty of burglary (720 ILCS 5/19-1 (West 2010)). The trial court sentenced defendant to 24 months' probation and ordered him to pay restitution. In this direct appeal, defendant argues that the State's improper remarks during closing argument amounted to plain error under Illinois Supreme Court Rule 615 (eff. Jan. 1, 1967). We agree and therefore reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3    On July 13, 2011, defendant and codefendant LaDerrion Preacely were charged by indictment with burglary. The single count alleged that on June 15, 2011, the two entered, without authority, Webster Middle School (the school) with the intent to commit a theft.

¶ 4    Defendant's individual trial commenced on August 25, 2011. During the State's opening argument, the prosecutor argued that defendant, his friend Preacely, and a third, undisclosed individual formulated a plan to enter the school at night to perform a theft. After Preacely shattered a window to the school, the three entered the building to find money to buy late-night snacks. Unable to find any money, they decided to leave but encountered the police.

¶ 5    Defense counsel challenged the State's theory by arguing that defendant was innocent of burglary. According to defense counsel, defendant made a "dumb decision" by entering a school "when he wasn't supposed to." While they were in the school, Preacely told defendant that he wanted to look for money so he could buy snacks at a gas station. However, defendant did not take anything or intend to take anything.

¶ 6    Officer Thomas Donnan testified first on behalf of the State. On June 15, around 10 p.m., Officer Donnan was dispatched to the school after the alarm was activated. Shortly afterward, Officers Paulsen and Shepherd also arrived and notified Officer Donnan that there was a broken window on one side of the school. Officer Donnan then stood near the main entrance of the school and saw two individuals running inside. One of the individuals, later identified as Preacely, exited the building, and Officer Donnan took him into custody. No money was found on Preacely. The other individual, later identified as defendant, did not exit the school

but stopped and ran in another direction. With the assistance of a canine unit, defendant was found inside the school awhile later.

¶ 7    Sergeant Scott Thomas testified that he interviewed Preacely, who said he was with two other individuals during the incident. Sergeant Thomas searched the school from top to bottom, which took about 90 minutes. The last room to be checked was the boiler room, where defendant was found lying on some pipes in the ceiling. Defendant was told to come down, and he did. Defendant was taken into custody, where he spent the night.

¶ 8    Detective Michael Taylor testified that he interviewed defendant the next day, on June 16. Defendant admitted that he went inside the school with his friend Preacely, who had kicked in the window. He also admitted that he was found hiding in the boiler room. Initially, defendant said that he entered the school to play basketball. Defendant's story subsequently changed, and he said that Preacely had the "munchies" and was looking for change in different rooms to buy a snack. Defendant also said that a third individual was with them, but he did not know his name. The third person was a friend of Preacely's.

¶ 9    Defendant gave a written statement to Detective Taylor. The written statement, which was read to the jury, stated as follows:

"We were coming from my house on the way to [Preacely's] house when we seen [*sic*] [the school] and decided to go in. He kicked the window and we went inside. He was talking about him being hungry and maybe find a dollar or maybe some change so we can go to the store and buy snacks. We couldn't find any change so we decided to leave. I was suggesting going to the gym, maybe play some ball or some stupid stuff, but that was dumb so we just left. As we were leaving, we seen [*sic*] police lights and got scared so we decided to run. I separated from [Preacely] and went downstairs to the boiler room and decided to sit in there."

¶ 10    James Gahagan, a school employee, testified that the incident occurred during summer break when only certain individuals with keys were allowed to enter the school. A brick or some type of stone was used to break the window.

¶ 11    The State rested, and defendant moved for a directed verdict on the basis that the State had not shown that defendant entered the school with the intent to commit a theft. The trial court denied defendant's motion.

¶ 12    Defendant testified on his own behalf as follows. He was 19 years old and lived at home with his parents and siblings. On June 15, he and Preacely decided to leave his house and walk to Preacely's house. On the way, a friend of Preacely's, whom defendant had never met, joined them. Preacely lived a couple of blocks from the school. As they walked through the school parking lot, Preacely kicked in one of the school's windows. Prior to that, the three had not discussed anything about breaking a window.

¶ 13    Preacely went inside the school through the broken window, and defendant "stood around for a few seconds," not knowing whether to follow Preacely or "just run and leave." Defendant decided to follow Preacely. Once inside the school, Preacely said he was hungry and wanted to look for some loose change. This idea did not come up until they were in the school. Preacely opened the door to the school hallway and tried to open some classroom doors, but they were locked. Defendant suggested checking out the gym and playing "some

-3-

basketball or something." After that, defendant said "maybe [they] should just get out" of there. Defendant talked about the gym to divert Preacely and "get his attention off of what he was trying to do." Immediately after that, they decided to leave.

¶ 14 As they were leaving, the police arrived, shining their flashlights. The police apprehended Preacely, who had exited the school, and defendant got scared. Instead of exiting the school, defendant ran and hid in the boiler room. Later, he was taken into custody and placed in a holding cell. The next morning, a detective questioned defendant, and defendant gave him a written statement.

¶ 15 Defendant was questioned about his written statement. Though he wrote that they "decided" to go in the school, there was no discussion before entering the school; Preacely was the one who first decided to go in. In his statement, defendant wrote they could not find change, so they decided to leave. However, defendant did not look for any change, did not touch anything, did not move anything, and did not take anything.

¶ 16 Defendant denied planning to take anything before entering the school. In addition, before entering the school, he did not know that Preacely was going to look for change. Once inside the school, he did not look for anything or help Preacely find anything.

¶ 17 On cross-examination, defendant was questioned further about his written statement. Defendant admitted that he wrote in his statement that "we" could go to the store and buy snacks. He used the word "we" because he would have accompanied Preacely to the store even though he would not have purchased any snacks. Although defendant wrote that "we" could not find any change, he denied looking for change in the school. According to defendant, Preacely's other friend was not looking for change either. Defendant wrote in his statement that playing basketball was "stupid" because they were not supposed to be in the school in the first place. Defendant told the detective that he went inside the school only to stop Preacely, but he admitted that he did not include this information in his written statement.

¶ 18 The parties rested. During the jury instruction conference, the court agreed to instruct the jury on the lesser included offense of criminal trespass to real property. The court also agreed, over defense counsel's objection, to instruct the jury on the theory of accountability.

¶ 19 The State maintained during its closing argument that defendant, Preacely, and a third person had a plan to go from defendant's house to Preacely's house, but the plan then changed. The State argued:

> "The defendant wants to claim or did claim that his friend got hungry and that his friend wanted to steal some money to use that money to pay for snacks at a gas station and that all this was his friend's idea and he had nothing to do with it.
>
> *Even if this self-serving testimony of the defendant is in fact true, it doesn't matter in this case, it doesn't affect the outcome.*" (Emphasis added.)

At this point, defense counsel objected. The court admonished the jury that counsel was allowed to argue; that what counsel said was not evidence; and that the court would instruct the jury on the law. Following the court's admonishments, the State argued that "*it does not prove the defendant's innocence in any way. In any case, it's irrelevant. And why is it irrelevant? Because that's what the law says.*" (Emphasis added.)

-4-

¶ 20    The State advised the jury that the only "real issue here" was intent. To this end, it argued that defendant broke into the school with his friend with the intention of stealing money or something of value. Turning to defendant's written statement, the State argued:

> "And what about his contention about diverting attention from his friends? Why wasn't that in the statement? It's a pretty vital fact to include, to let the police know that the only intention that the defendant had was to persuade his friends and to have him come out of the school or go play basketball instead of stealing the money. *That right there proves your innocence, and he didn't put that in his statement.*" (Emphasis added.)

Defense counsel objected, and the court advised the jury that, although counsel was allowed to argue the evidence, defendant was presumed innocent of the charge against him. The court further advised the jury that the State had the burden of proving defendant guilty beyond a reasonable doubt; that the jury should use its recollection of the evidence; and that counsel could argue reasonable inferences from the evidence.

¶ 21    The State went on to argue that defendant and his friend were equally culpable for their actions. It argued:

> "It's plain and simple. The defendant and his friend carried out a criminal act, and together they got caught. They should equally be held culpable. They broke into a school with no authorization and with the intent to steal. And I want to remind you that the act of stealing is not necessary under this charge, but that the intent is there. In this case the defendant entered the school with his friend without permission with the intent to find money and take that money.
>
> Defense counsel's suggestion that the friend holds the blame, and for that reason you can't hold the defendant guilty. *The problem with that is that's not the law.*" (Emphasis added.)

Again, defense counsel objected. The court admonished the jury that it would instruct it on the law; that counsel was allowed to argue the evidence and reasonable inferences therefrom; and that what the attorneys said was not evidence.

¶ 22    After discussing the different propositions of burglary, the State concluded that "*[i]t is up to you to take the testimony and evidence presented to you by the State* and find the defendant guilty of burglary." (Emphasis added.)

¶ 23    The jury found defendant guilty of burglary. Defendant subsequently filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied defendant's motion. The trial court sentenced defendant to 24 months' probation and ordered him to pay restitution. Defendant timely appealed.

¶ 24                                   II. ANALYSIS
¶ 25                    A. Plain-Error Review of Improper Remarks
¶ 26    On appeal, defendant argues that several of the State's remarks during closing argument were improper and thus denied him a fair trial. Though the majority of the challenged remarks were objected to during trial, defendant concedes that he failed to include them in his posttrial motion, resulting in forfeiture. Nevertheless, defendant urges this court to review

the issue under the plain-error doctrine.

¶ 27    The plain-error doctrine contained in Illinois Supreme Court Rule 615(a) provides a narrow exception to the general rule of procedural default. *People v. Lewis*, 234 Ill. 2d 32, 42 (2009). The doctrine allows a reviewing court to consider an unpreserved error when (1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *Id.* at 42-43. The defendant bears the burden of persuasion under both prongs of the plain-error test. *Id.* at 43. Our first step in plain-error analysis is determining whether any error occurred. *Id.* at 42.

¶ 28                                    B. Error Occurred

¶ 29    Overall, defendant lists five remarks made by the State during closing argument that he contends either misstated the law or shifted the burden of proof. It is well settled that the State may comment on the evidence, draw inferences therefrom, and comment on the accused's credibility. *People v. Echols*, 382 Ill. App. 3d 309, 318 (2008). Though the State is given wide latitude in closing arguments (*id.*), the State is not allowed to misstate the law or facts of the case, and it is not allowed to diminish its burden of proof (*People v. Buckley*, 282 Ill. App. 3d 81, 89 (1996)). As we discuss below, we agree with defendant that these five remarks constituted error.[1]

¶ 30    The first two challenged comments were made during the State's discussion of legal accountability. First, the State argued:

> "The defendant wants to claim or did claim that his friend got hungry and that his friend wanted to steal some money to use that money to pay for snacks at a gas station and that all this was his friend's idea and he had nothing to do with it.
>
> *Even if this self-serving testimony of the defendant is in fact true, it doesn't matter in this case, it doesn't affect the outcome.*" (Emphasis added.)

Second, the State argued:

> "It's plain and simple. The defendant and his friend carried out a criminal act, and together they got caught. They should equally be held culpable. They broke into a school with no authorization and with the intent to steal. And I want to remind you that the act of stealing is not necessary under this charge, but that the intent is there. In this case the defendant entered the school with his friend without permission with the intent to find

---

[1]In this case, we note that closing argument was delivered by a student pursuant to Illinois Supreme Court Rule 711(c)(2)(ii) (eff. Feb. 10, 2006), which allows a qualifying law student or graduate to participate in criminal trial proceedings as an assistant of a supervising, licensed attorney. While we laud the program of allowing students to participate in trials and encourage its continued application, we caution that the rule itself requires the supervising attorney to "be present and responsible for the conduct of the proceedings." Ill. S. Ct. R. 711(c)(2)(ii). Appropriate supervision is critical to the functioning of the rule.

money and take that money.

Defense counsel's suggestion that the friend holds the blame, and for that reason you can't hold the defendant guilty. *The problem with that is that's not the law.*" (Emphasis added.)

Defense counsel objected to both of these comments. On both occasions, the court admonished the jury that it would instruct it on the law; that counsel was allowed to argue the evidence and reasonable inferences therefrom; and that what the attorneys said was not evidence.

¶ 31      Misstatements of law in closing argument can be grounds for reversal (*People v. Jackson*, 2012 IL App (1st) 092833, ¶ 36), and both of the State's remarks misstated the law. The defense theory was that defendant had no intent to steal money when entering the school. See 720 ILCS 5/19-1 (West 2010) (a person commits burglary when without authority he knowingly *enters a building with intent* to commit a felony or theft). In terms of accountability, the defense theory was that defendant had no knowledge of Preacely's intent to steal money upon entering the school and that, at most, he was guilty of criminal trespass to real property. See 720 ILCS 5/5-2(c) (West 2010) (a person is legally accountable for the conduct of another when either before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid that other person in the planning or commission of the offense). The State, on the other hand, argued that defendant was legally accountable for Preacely's actions in that he shared Preacely's intent to steal money upon entering the school.

¶ 32      Contrary to what the State argued, if the jury believed defendant's testimony that, before entering the school, he did not have knowledge of Preacely's intent to steal money, it would have affected the outcome because defendant would not have had the intent necessary to be accountable for Preacely's actions and thus guilty of burglary. The State also misstated the law by advising the jury that the defense theory, which was that Preacely, alone, held the blame, could not absolve defendant. By arguing that that was *not* the law, the State misstated the law of accountability as to the burglary charge. In other words, had the jury believed defendant's version of events, defendant would have lacked the intent necessary to be accountable for Preacely's actions, and, at most, he would have been convicted of criminal trespass to real property.

¶ 33      Defendant is also correct that the State improperly shifted the burden of proof by telling the jury on two occasions that he failed to prove his innocence. Referring to defendant's self-serving testimony, the State argued that "*it does not prove the defendant's innocence in any way. In any case, it's irrelevant. And why is it irrelevant? Because that's what the law says.*" (Emphasis added.) Then, in reference to defendant's written statement, the State argued:

"And what about his contention about diverting attention from his friends? Why wasn't that in the statement? It's a pretty vital fact to include, to let the police know that the only intention that the defendant had was to persuade his friends and to have him come out of the school or go play basketball instead of stealing the money. *That right there proves your innocence, and he didn't put that in his statement.*" (Emphasis added.)

Defense counsel did not object to the first remark but objected to the second remark. In

response to the objection, the court admonished the jury that, although counsel was allowed to argue the evidence, defendant was presumed innocent of the charge against him. The court also advised the jury that the State had the burden of proving defendant guilty beyond a reasonable doubt; that the jury should rely on its recollection of the evidence; and that counsel could argue reasonable inferences from the evidence.

¶ 34　　　In *People v. Phillips*, 127 Ill. 2d 499, 527 (1989), our supreme court stated that it is impermissible for the prosecution to attempt to shift the burden of proof to the defense. The law presumes the innocence of an accused until he is proven guilty beyond a reasonable doubt (*People v. Tyson*, 137 Ill. App. 3d 912, 921 (1985)), and the State is not allowed to imply that the defendant had to show his innocence (*People v. Reyna*, 289 Ill. App. 3d 835, 839-40 (1997)). While the State may comment on evidence presented by the defendant, "[t]here is a great deal of difference between an allegation by the [State] that defendant did not prove himself innocent and statements questioning the relevance or credibility of a defendant's case." *Phillips*, 127 Ill. 2d at 527.

¶ 35　　　Here, the State went beyond commenting on the relevance and credibility of defendant's case when it stated, in reference to his self-serving testimony, that it did not prove his innocence in any way. Instead of challenging the credibility of defendant's testimony that before entering the school he had no intent to steal money and did not know of Preacely's intent to steal money, the State gave the jury the impression that he was under an obligation to prove his innocence. Later, when challenging defendant's written statement on the basis that it did not include his stated intention to try to divert Preacely from taking money once inside the school, the State went beyond simply pointing out this omission from the written statement. Rather, it went as far as saying that including this information in his written statement would have proven defendant's innocence, as though he was required to do so, but he failed to include it. Again, the State's clear message to the jury was that defendant had an obligation to prove his innocence, which was error.

¶ 36　　　Last, defendant refers to the State's final comment to the jury during closing argument. After discussing the legal propositions to establish burglary, the State concluded by telling the jury that "*[i]t is up to you to take the testimony and evidence presented to you by the State* and find the defendant guilty of burglary." (Emphasis added.) Defendant argues that the State essentially advised the jury that it did not need to consider any evidence from the defense in reaching its determination, which was a misstatement of the law.

¶ 37　　　By admonishing the jury to consider the State's evidence (to the obvious exclusion of defendant's evidence), we agree that the comment was an incomplete statement of the law, in that the correct standard is whether, taking *all of the evidence* into consideration, guilt as to every essential element of the charge has been proven beyond a reasonable doubt. See *People v. Young*, 347 Ill. App. 3d 909, 927 (2004). This comment, standing alone, was not nearly as objectionable as the other remarks discussed above; however, the comment becomes problematic in the context in which it was made. See *People v. Beltran*, 2011 IL App (2d) 090856, ¶ 61 (the reviewing court can consider the cumulative effect of improper argument rather than assess the prejudicial effect of every isolated comment); *People v. Maldonado*, 402 Ill. App. 3d 411, 422 (2010) (when reviewing claims of prosecutorial misconduct in closing argument, a reviewing court will consider the entire closing argument

in order to place the comments in context). Prior to directing the jury to take the evidence presented *by the State* and find defendant guilty, the State improperly advised the jury that defendant's testimony did not affect the outcome of the case and was irrelevant; that ignoring or rejecting the defense theory was the law; and that defendant was under an obligation to prove his innocence. Therefore, put in context, the State's comment perpetuated a theme of misstating the law.

¶ 38                    C. Reversible Error Under Plain-Error Doctrine

¶ 39        Having determined that the State did make improper comments during closing argument, we next consider whether the improper comments amounted to reversible error under the plain-error doctrine. The defendant faces a substantial burden in achieving reversal of his conviction based upon improper remarks during closing argument. *People v. Meeks*, 382 Ill. App. 3d 81, 84 (2008). This is especially true here, where we review the errors in the context of the plain-error doctrine as opposed to the standard that applies when an error is preserved. See *People v. Euell*, 2012 IL App (2d) 101130, ¶ 22 ("when a defendant preserves this issue for review, we may affirm if we deem the comments harmless beyond a reasonable doubt, reversing only where the improper remarks resulted in substantial prejudice to the defendant's right to a fair trial" (emphasis omitted) (internal quotation marks omitted)); see also *People v. Hampton*, 387 Ill. App. 3d 206, 220 (2008) (the reviewing court asks whether the State's comments during closing argument engendered substantial prejudice against a defendant such that it is impossible to say whether a verdict of guilt resulted from them). As this court recently noted in *Euell*, 2012 IL App (2d) 101130, ¶ 22, "[i]f we do not automatically reverse in light of a *preserved* misstatement of the burden of proof, certainly we may not automatically reverse in light of a *forfeited* one." (Emphases in original.) Therefore, in accordance with the plain-error rule, we will reverse only when (1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *Lewis*, 234 Ill. 2d at 42-43.

¶ 40                    D. Evidence Was Closely Balanced

¶ 41        Defendant contends that both prongs of the plain-error doctrine are satisfied in this case. Beginning with the first prong, he argues that the evidence was closely balanced because his guilt depended on his intent at the moment Preacely kicked in the window and entered the school. According to defendant, his testimony revealed that he was merely following Preacely; there was no discussion of what Preacely was going to do before he kicked in the window and entered the school; and it was not until *after* they entered the school that Preacely brought up the idea of looking for money to buy snacks. Defendant concludes that, had the jury not been told to ignore this evidence, it would have acquitted him of burglary based on accountability and perhaps convicted him of criminal trespass to real property.

¶ 42        It is undisputed that defendant entered the school after Preacely broke the window and

that he hid in the boiler room when police arrived. Defendant's flight from police is proof of consciousness of guilt. See *People v. Harris*, 225 Ill. 2d 1, 23 (2007) (evidence of flight is generally admissible as proof of consciousness of guilt). However, defendant is correct that this evidence could have led the jury to find defendant guilty of criminal trespass to real property as opposed to burglary.

¶ 43 For the burglary charge, this case did boil down to his intent at the moment he entered the school. The intent necessary to commit burglary is usually established by circumstantial evidence since it is rarely susceptible of direct proof. See *People v. Davis*, 233 Ill. App. 3d 878, 880 (1992). In determining defendant's intent, the jury could consider his in-court testimony as well as his written statement.

¶ 44 On the one hand, defendant's written statement supported an inference that defendant had the intent necessary to commit a burglary upon entering the school, in that the statement repeatedly used the word "we." Defendant said in his statement that "we" saw the school and decided to go in; Preacely kicked the window and "we" went inside; Preacely "was talking about him being hungry and maybe find a dollar or maybe some change" so "we" could go to the store and buy snacks; and "[w]e" could not find any change so "we" decided to leave. On the other hand, the written statement did not indicate *when* Preacely first talked about looking for money in the school, the most critical issue in terms of intent. However, defendant offered specific testimony on this issue. Defendant testified that there was no discussion of what Preacely was going to do before they entered the school and that it was not until *after* they entered the school that Preacely brought up the idea of looking for money to buy snacks. Given that defendant's written statement was ambiguous as to when Preacely developed the intent to look for money in the school, and that defendant denied that Preacely voiced such an intent prior to entering the school, the evidence was closely balanced on the issue of defendant's intent.

¶ 45 In cases where the evidence was *not* closely balanced on the issue of intent, the evidence of the defendant's intent was much greater than what is present here. See *People v. Land*, 2011 IL App (1st) 101048, ¶¶ 22, 101-03 (the court found that the evidence on the issue of whether the defendant intended to kill or injure an animal was not closely balanced where it would have taken four to six weeks for a heavy tow chain to become embedded in the dog's neck, there was expert testimony regarding the injury, and the defendant's testimony was inherently incredible); see also *People v. Carter*, 405 Ill. App. 3d 246, 253 (2010) (the court found that the evidence of the defendant's intent to commit aggravated criminal sexual abuse was overwhelming where the underage victim and an eyewitness testified regarding the sexual incident); *People v. Wells*, 184 Ill. App. 3d 925, 934-36 (1989) (evidence not closely balanced on the central issue of the defendant's intent to deliver drugs under an accountability theory where the defendant counted the money during a drug deal).

¶ 46 Having determined that the evidence was closely balanced on the issue of defendant's intent, we agree with defendant that the State's improper comments during closing argument severely threatened to tip the scales of justice against defendant. By arguing that defendant's self-serving testimony had no effect on the outcome, and that it was "not the law" that defendant could be absolved if Preacely, alone, held the blame, the State essentially advised the jury that, even if it believed defendant's version of events, it did not matter; he would still

be guilty of burglary. In addition to misstating the law of accountability, the State twice stated that defendant had not proved his innocence. See *People v. Brooks*, 345 Ill. App. 3d 945, 951 (2004) ("the number of times the jury is confronted with a misstatement of law is relevant in evaluating the nature and extent of the harm"). As stated, this court can consider the cumulative effect of improper argument (*Beltran*, 2011 IL App (2d) 090856, ¶ 61), which here advised the jury not only that defendant had a duty to prove his innocence, but also that his theory of defense was not valid.

¶ 47      On this issue, *People v. Gutierrez*, 239 Ill. App. 3d 536 (1992), is instructive. In *Gutierrez*, the evidence concerning the defendant's voluntary-intoxication defense was closely balanced. *Id.* at 544. During closing argument, the State implied that voluntary intoxication was not a valid defense and repeatedly stated that the defendant and defense witnesses did not "prove" or "establish" the intoxication defense. *Id.* Reasoning that the State's closing argument could be interpreted only as a statement that the defendant had to prove his defense of voluntary intoxication, the court found that the State's misstatements of the law amounted to plain error. *Id.* at 544-45; see also *People v. Derr*, 316 Ill. App. 3d 272, 275 (2000) (the State's repeated references to the defendant's failure to present evidence to prove his innocence and testify denied the defendant a fair trial); *People v. Giangrande*, 101 Ill. App. 3d 397, 401-02 (1981) (it was improper for the State to ask, " 'where's the evidence that defendant didn't do it?' " (emphasis omitted), because it suggested that the defendant was required to present evidence tending to prove his innocence).

¶ 48      In addition, the fact that the trial court admonished the jury as to the applicable law after three out of the five improper remarks does not affect our conclusion. "[T]he prejudicial effect of an improper argument cannot always be erased from the minds of the jury by an admonishment from the court." *Buckley*, 282 Ill. App. 3d at 90; see also *Derr*, 316 Ill. App. 3d at 276 ("[i]t is reversible error for the State to attempt to shift the burden of proof to the defense, notwithstanding the fact that the jury is properly instructed regarding the burden of proof").

¶ 49      Finally, though the evidence regarding defendant's intent was closely balanced, there was sufficient evidence to convict defendant of burglary, meaning there is no double jeopardy impediment to a new trial. See *People v. Wheeler*, 226 Ill. 2d 92, 134-35 (2007) (because the evidence was sufficient to convict the defendant, there was no double jeopardy impediment to a new trial). Our resolution of this case on the first prong of the plain-error doctrine obviates the need to consider defendant's argument under the second prong.

¶ 50                           III. CONCLUSION

¶ 51      The State's improper remarks during closing argument, which misstated the law and shifted the burden of proof, amounted to plain error because the evidence was closely balanced. Accordingly, the judgment of the circuit court of Lake County is reversed and the cause is remanded for a new trial.

¶ 52      Reversed and remanded.