2021 IL App (2d) 180536-U
No. 2-18-0536
Order filed March 9, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-803 |
| JAMES T. ABRON, | ) ) | Honorable Randy Wilt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Bridges and Justice Hudson concurred in the judgment.

¶ 1    *Held*:    The trial court did not err in barring defendant from cross-examining the victim on whether she used his cell phone to take a series of lewd photographs to send to another person on Facebook. No plain-error occurred when the trial court issued a curative instruction to the jury following the State's failure to elicit other-crimes evidence after the trial court's issuance of an other-crimes limiting instruction.

¶ 2    After a jury trial, defendant, James T. Abron, was convicted of eight counts of child pornography, three counts of criminal sexual assault, and one count of predatory criminal sexual assault. Defendant appeals, contending that (1) the trial court erred in barring defense counsel from cross-examining the victim as to whether she used a cell phone to take several lewd photographs to send to another person on Facebook; and (2) the State engaged in prosecutorial misconduct

when it allowed the trial court to read an other-crimes limiting instruction before witness testimony when it had no intention of eliciting such evidence. For the reasons that follow, we affirm defendant's convictions.

¶ 3                                    I. BACKGROUND

¶ 4       On July 13, 2016, a grand jury returned a 13-count indictment against defendant. Relevant to the present appeal, Count 1 alleged defendant committed predatory criminal sexual assault of a child (hereinafter, K.H.) in violation of section 11-1.40(a)(1) of the Criminal Code of 2012 (Criminal Code). 720 ILCS 5/11-1.40(a)(1) (West 2016). Counts 2, 3, and 4 alleged defendant committed criminal sexual assault of K.H. in violation of section 11-1.20(a)(3) of the Criminal Code. 720 ILCS 5/11-1.20(a)(3) (West 2016). Counts 5 and 6 alleged defendant committed the offense of child pornography in that he knowingly photographed K.H. in violation of section 11-20.1(a)(1)(vii) of the Criminal Code. 720 ILCS 5/11-20.1(a)(1)(vii) (West 2016). Counts 7, 8, 9, 10, 11, and 12 alleged defendant committed the offense of child pornography in that he knowingly possessed lewd photographs of K.H. in violation of section 11-20.1(a)(6) of the Criminal Code. 720 ILCS 5/11-20.1(a)(6) (West 2016)[1].

¶ 5       On August 1, 2017, the State filed a series of motions *in limine*. Relevant here, the State's third motion *in limine* sought an order prohibiting defendant from making any reference of K.H.'s past sexual activity or reputation pursuant to section 115-7(a) (hereinafter, the rape-shield statute) of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure). The State's seventh motion *in limine* requested the trial court to allow evidence of other acts committed by defendant,

_____

[1] The State *nolle prossed* Count 13 of the indictment following its case-in-chief at trial.

specifically the facts underlying defendant's conviction for aggravated domestic battery. See *People v. Abron*, 2020 IL App (2d) 170795-U.

¶ 6    On September 26, 2017, the trial court held a hearing on the State's motions *in limine*. Over defense counsel's objection, the trial court granted the third motion *in limine*. As to the seventh motion *in limine*, the trial court found the facts underlying defendant's aggravated domestic battery conviction were relevant to show consciousness of guilt because evidence that defendant pushed and ultimately broke M.B.'s ankle after she questioned him as to why he was in the bathroom with K.H., related to K.H. first disclosing defendant's actions to her mother at the hospital. Over defense counsel's objection, the trial court said

> "This is not your typical prior bad act. This is a part of the incident itself that lead [sic] ultimately to the disclosure. So I do find that it is relevant not as a prior bad act but as evidence that relates to the charges themselves. It explains how the charges were finally disclosed.
>
> So the fact that her ankle was broken is not relevant. The fact that she saw them coming out of the bathroom and said, I am paraphrasing, what are you doing in the bathroom with my daughter, and in response to that his reaction was to push her, that she fell and injured her ankle and ultimately ended up having to go to the hospital and it was at the hospital that the disclosure was made, I think that is *** relevant to explain how this girl ended up at the hospital and making the disclosure there."

¶ 7    On October 16, 2017, defendant's trial commenced. Before the jury was brought in, the trial court addressed the State's seventh motion *in limine*:

"[The] State's motion in limine number seven which I granted at least for a portion of the testimony, prior incident or other bad act, if you will. I also indicated in my order that the State was to tender a [Illinois Pattern Jury Instruction] 3.14 instruction. That's a limiting instruction. \*\*\*

Before you call \*\*\* the victim's mother, \*\*\* if you intend to present that evidence, I want that limiting instruction. It's supposed to be read prior to the time that the testimony is given regarding that other incident unless the defense objects."

Defense counsel indicated that he would not have an objection to the trial court's reading of the limiting instruction.

¶ 8    The State first called K.H. to testify. K.H. was born on April 11, 2002, and was 15 years old at the time of her testimony. She stated that defendant was her "step-dad" as he and her mother had been in an eight-year relationship, beginning when K.H. was eight years old. She lived with her mother and defendant in Grand Rapids, Michigan, before moving with them to Rockford when she was about 12 years old. Beginning when she was 11 years old, defendant began touching K.H. under her clothes on her "vagina," "butt," and "breasts". When she turned 12 and moved to Rockford, defendant began performing oral sex on K.H. Sometime after she turned 13, defendant started having vaginal intercourse with K.H. and placing his penis in her mouth. Defendant would not wear a condom during these acts and would ejaculate in K.H.'s vagina. Defendant purchased a Plan B pill to prevent K.H. from getting pregnant, which she took. Defendant would give K.H. alcohol and marijuana to calm her down before having sex with her. She remembered telling defendant "no" when he tried to engage in sexual acts with her after turning 13. Defendant reacted by tearing up her clothes and telling K.H. that she would not be allowed to "see [her] brother

anymore or he threatened to put me and my mom out and things like that." Defendant told K.H. that when she turned 16, he wanted to have a baby with her.

¶ 9    K.H. testified that defendant owned a Samsung Galaxy cell phone that she sometimes used. When she was 13, she used the phone to take pictures of her breasts in the bathroom of the Rockford residence. During that same time, defendant used the phone to take pictures of K.H.'s vagina in the home. K.H. was shown a series of photographs taken from defendant's Samsung Galaxy cell phone. She identified People's Exhibit 1 as defendant's cell phone. She identified People's Exhibits 6, 8, and 9 as pictures of her breasts that she took with defendant's phone. She identified People's Exhibit 7 as a picture of her vagina she took with defendant's phone. She identified People's Exhibits 10 and 11 as pictures of her vagina that defendant took with the phone.

¶ 10    K.H. recalled being at the hospital with her mother on January 16, 2016. She disclosed to her mother what defendant had been doing to her. She testified that she chose that moment to tell her mother "because I felt that we weren't going back to [defendant's] house, that *** I was free, basically." A police officer was present in the hospital room with K.H. and her mother when she made the disclosure.

¶ 11    During a sidebar before cross-examination of K.H., defense counsel told the trial court that he wanted to address K.H. having taken the photos on defendant's phone to send to a boy on Facebook. In denying defense counsel's request, the trial court said

> "You certainly can ask her whether or not the defendant told her to take those pictures, but why she took those pictures is not relevant to the issue of whether or not he possessed those pictures. ***

I mean, anymore you have these kids that are doing all these kinds of things, they post them on the internet or whatever it is. Doesn't really matter why she took the pictures unless he ordered her to take them. What matters is whether or not, for example, she told him about them or whether or not she had any reason to believe he knew those pictures were there.

So you may not ask her questions along the line isn't it true you took those pictures to send them to somebody else. You may ask her questions about whether or not the defendant *** told her to take those pictures. You may ask her whether or not she told the defendant that she had taken those pictures. Whether or not she had any reason to believe he had knowledge of those pictures on his phone. But the underlying reasons why she took them to send to another boy is in violation of the *** earlier order *in limine* and it's not relevant."

Defense counsel informed the trial court that he was reiterating his objection to the State's third motion *in limine* as he

"[W]anted to make it known to the Court with an objection that I believe that it is relevant for the jury *** to know that those pictures were not taken on behest of [defendant]. They were done of her own volition and *** the purpose of why the pictures were taken to send out to somebody else and not anything at [defendant's] behest."

The court reiterated to defense counsel that he could ask if the photos were taken at defendant's request or if K.H. had reason to believe that defendant knew she took those pictures and they remained on his phone. However, whether they were taken "to send to another boy is not relevant and doesn't come in."

¶ 12    On cross-examination, K.H. testified that defendant's cell phone was used, whenever needed, by everyone in the household. This included K.H., her mother, her three brothers, and defendant. She admitted that she did not know if defendant knew whether the photos she took of herself were on the phone.

¶ 13    The State next called Shannon Krueger, a pediatric nurse practitioner, to testify. Krueger met with K.H. on January 29, 2016, at the Merit Clinic after K.H. was referred for an evaluation of possible child sexual abuse. K.H. told Krueger that "a gentleman had toucher her over her clothing and put his mouth *** on her vaginal area" when she was 11. K.H. told Krueger that the "same gentleman had started touching her underneath her clothes and inserting his penis into her vaginal area" when she was 13. Krueger testified that K.H. recounted the first instance of vaginal intercourse as painful, causing bleeding in her vaginal area. K.H. told Krueger that "the act of intercourse where he was inserting his penis into her vagina occurred weekly for a long period of time." Krueger recalled K.H. stating that the gentleman did not use a condom and "provided [K.H.] with the morning after pill that was purchased at Walmart" after ejaculating inside K.H. on one occasion.

¶ 14    The State then called M.B., K.H.'s mother, to testify. Before her testimony, the trial court held another sidebar wherein it informed the parties that it would be reading Illinois Pattern Jury Instruction 3.14 to the jury. Defense counsel did not object to the instruction. The trial court then stated, "I think I will read this instruction before [M.B.] takes the stand because I assume [the State is] going to get into the incident fairly quickly." Defense counsel reiterated no objection to the instruction but voiced a continuing objection to the introduction of other-crimes evidence. Upon the reentrance of the jury, the trial court read the following instruction:

"All right. Ladies and gentleman, before we bring the next witness in I want you to understand something. Evidence will be presented that the defendant has been involved in conduct other than those charged in the Indictment. This evidence has been received on the issue or will be received on the issue of defendant's consciousness of guilt and may be considered by you only for that limited purpose.

It is for you to determine whether the defendant was involved in that conduct and, if so, what weight should be given to this evidence on the issue of *** consciousness of guilt."

¶ 15    M.B. testified that she had been in an eight-year relationship with defendant, beginning in Grand Rapids, Michigan before she moved with him and K.H. to Rockford in August or September 2014. M.B. and defendant shared a son and defendant had two of his own sons that all resided in the Rockford home as well. Regarding January 15, 2016, M.B. said that she and defendant had an argument towards the end of the day when she saw defendant and K.H. come out of the bathroom together. She felt the two of them together alone in the bathroom was inappropriate as there was no reason K.H. would need help in the bathroom from defendant. M.B. confronted defendant about her concerns and later went to the hospital with K.H. While at the hospital, K.H. gave her a note to pass to the officer present in the room with them.

¶ 16    M.B. stated that defendant had a cell phone that she would sometimes use for family calls or to check email and Facebook. After using the phone, she would give it back to defendant. When she moved out of the Rockford residence, defendant kept the phone.

¶ 17    Following M.B.'s testimony, the trial court excused the jury before informing the parties of its concerns about the issuance of the limiting instruction. The trial court said

"I've read a limiting instruction to the jury based upon what I thought the evidence was going to be based upon the order *in limine* I entered where the State had indicated they were going to have [M.B.] testify that at the house \*\*\* when she confronted him, [defendant] pushed her down. \*\*\*

The pushing her down was the conduct that was at issue that \*\*\* [the State] argued was going to be evidence of consciousness of guilt as the IPI instructions indicate. I read that instruction to them before the testimony took place and then that testimony was never presented. So I've \*\*\* given [the jury] an instruction indicating evidence was being presented that [defendant] committed another act that was relevant to the issues of consciousness of guilty and then there's nothing like that.

So how do we propose to go ahead from here with that? My suggestion would be, I guess, that the earlier instruction I read to them, they may disregard it because that evidence was not presented. \*\*\* If you [the State] weren't going to present the testimony you should have told me so I didn't give the limiting instruction."

Defense counsel asked the trial court for a curative instruction. The State did not object and stated that it chose not to ask M.B. about defendant pushing her after he and K.H. emerged from the bathroom because "we wanted to avoid relitigating" defendant's aggravated domestic battery case. The trial court then proposed its curative instruction language to the parties. Defense counsel did not object to the trial court's proposed curative instruction.

¶ 18    The jury was brought back in to the courtroom and the trial court gave the following instruction:

"Prior to the testimony of the last witness, [M.B.], the Court read an instruction regarding potential evidence of conduct by the defendant that was not charged in the Indicment. The jury is ordered to disregard that instruction as no such evidence was presented. Do you understand?

The jury indicated that it understood the trial court's instruction.

¶ 19    The State then called Officer Spencer Berke, a crime scene detective with the Rockford Police Department, to testify. Berke conducted a cell phone data extraction of defendant's cell phone and converted the data to a PDF file burned to a CD and identified as People's Exhibit 17. None of the photos in question had been marked as previously-deleted from the phone before extraction. Berke made one investigative copy of the CD and gave it to Detective Joseph Caltagerone of the Rockford Police Department.

¶ 20    Caltagerone was called as the State's final witness. He executed a search warrant and retrieved defendant's cell phone from his property at the Winnebago County Jail. After getting the CD from Berke containing the data extracted from defendant's phone, Caltagerone printed 14 photos of K.H. he found on the CD and reviewed them with K.H. He testified that K.H. identified People's Exhibits 6, 7, 8, and 9 as photos she took, and People's Exhibits 10 and 11 as photos of K.H. taken by defendant. The State then rested its case-in-chief.

¶ 21    Defendant was called as the sole witness to his defense. Defendant denied ever spending time alone with K.H., placing his mouth on her vagina, placing his penis in her vagina, taking photographs of K.H.'s breasts or vagina, threatening her, or telling her that she was going to have his baby when she turned 16.

¶ 22    Regarding his cell phone, defendant testified that everyone in the house used it and there was not a password locking the phone. It could be accessed by anyone in the house at any time. He denied knowing that the phone contained photos of K.H.'s breasts and vagina. He admitted that he kept the phone after M.B. and K.H. moved out. Defendant was wildly inconsistent with the dates in which M.B. and K.H. moved to the Rockford home, as well as the dates that they moved out of the home.

¶ 23    Following defendant's testimony, the State published a certified record of his 2017 aggravated domestic battery conviction, People's Exhibit 18, for the purposes of impeachment.

¶ 24    During closing argument, the State prosecutor remarked as follows regarding K.H. and M.B.'s testimony:

"We *** know that we heard from [K.H.'s] mom, [M.B.]. We heard from her and she told you that she had been noticing that this defendant was being alone with [K.H.], that she would walk into the room and he would leave really quick and it was weird. And ultimately in January she found them alone together and he left and it was weird and she ended up confronting him about it.

This supports [K.H.]. This *** defendant had the opportunities to be preying on [K.H.], to be assaulting her. These things were happening in this household and [K.H.'s] mom was picking up on it, picking up on how this defendant was acting with this child in her home.

***

And we also again heard from [M.B.]. [M.B.], who said that she was noticing that these things were happening, that she was seeing them alone together in the house, that he

would be weird and quiet and leave the room when she came near them. She said *** this was not normal.

And then finally in January 2016, she saw them in the bathroom together. There was no reason for them to be in the bathroom together alone. No reason at all. You can use your common sense here. And she confronted him about it. And then they went to the hospital and that's when [K.H.] told what was happening when they were away, when they were in the safe setting in the hospital with a police officer standing right there and that's an opportunity that [K.H.] took."

¶ 25    The jury found defendant guilty on all 12 counts.

¶ 26    On December 21, 2017, defendant filed an amended motion for judgment notwithstanding the verdict or, alternatively, for a new trial. Relevant here, the motion argued that

"[T]he Court erred in denying defendant *** the right to cross examine the alleged minor victim as to the fact that she took various naked pictures of herself for the purpose of disseminating them to a third person. That the purpose of presenting such testimony was not to attack the past sexual activity or reputation, but to show that the minor had taken the pictures for her own purposes and not at the direction of the defendant *** and that she had a motive to have stored naked pictures of herself on the family used cell phone."

On March 19, 2017, the trial court denied defendant's posttrial motion and stated

"We had a hearing about that. I allowed her to testify that she took the pictures, that she took the pictures on his phone. It's relevant that the pictures were on his phone as it related to the possession charges, in terms of possession of child pornography. Why she

took them is not relevant. What's relevant is *** were they on his phone and did he know they were on his phone."

¶ 27    On May 25, 2018, defendant was sentenced to 15 years' imprisonment for predatory criminal sexual assault, and eight years' imprisonment for each of three counts of criminal sexual assault. On the child pornography counts, defendant was sentenced to two consecutive 4 year terms for taking the photos of K.H. in violation of section 11-20.1(a)(1)(vii) of the Criminal Code, and six concurrent 3 year terms of imprisonment for possession of the photos of K.H. on his cell phone in violation of section 11-20.1(a)(6) of the Criminal Code.

¶ 28    Defendant then filed this timely appeal.

¶ 29                                    II. ANALYSIS

¶ 30    On appeal, defendant contends that the trial court violated his constitutional right to confront his accuser when it misapprehended the rape-shield statute and denied defense counsel's request to cross-examine K.H. about whether she used defendant's cell phone to take photos of herself to send to a third party. Additionally, defendant contends that the State engaged in prosecutorial misconduct when it allowed the trial court to read a consciousness of guilt other-crimes limiting instruction to the jury before M.B.'s testimony, despite knowing that it did not intend to elicit such evidence from her testimony. We address defendant's contentions in turn.

¶ 31    Evidentiary rulings are reviewed for abuse of discretion. *People v. Santos,* 211 Ill. 2d 395, 401 (2004). A trial court abuses its discretion only when its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *Santos*, 211 Ill. 2d at 401.

¶ 32    The rape-shield statute provides, in pertinent part, as follows:

> "In prosecutions for *** criminal sexual assault, [and] aggravated criminal sexual abuse, *** the prior sexual activity or the reputation of the alleged victim *** is inadmissible except (1) as evidence concerning the past sexual conduct of the alleged victim *** with the accused when this evidence is offered by the accused upon the issue of whether the alleged victim *** consented to the sexual conduct with respect to which the offense is alleged; or (2) when constitutionally required to be admitted." 725 ILCS 5/115–7(a) (West 2016).

The rape-shield statute absolutely bars evidence of the alleged victim's prior sexual activity or reputation, subject to two exceptions: (1) evidence of past sexual activities with the accused, offered as evidence of consent; and (2) where the admission of such evidence is constitutionally required. *Santos*, 211 Ill. 2d at 401-02.

¶ 33 The purpose of the rape-shield statute is to prevent a defendant from harassing and humiliating the complaining witness with evidence of either her reputation for chastity or specific acts of sexual conduct with persons other than the defendant. The statute's "when constitutionally required" exception "requires that a defendant 'be permitted to offer certain evidence which [is] *directly* relevant to matters at issue in the case, notwithstanding that it concern[s] the victim's prior sexual activity.' (Emphasis in original.)" *People v. Summers*, 353 Ill. App. 3d 367, 373 (2004) (quoting *Santos,* 211 Ill. 2d at 405–06). The true question is always one of relevancy, and the alleged victim's sexual history is not constitutionally required to be admitted unless it would make a meaningful contribution to the fact-finding enterprise. *People v. Johnson*, 2014 IL App (2d) 121004, ¶ 42.

¶ 34    "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ill. R. Evid. 401 (eff. Jan 1, 2011). All relevant evidence is admissible, except as otherwise provided by law, and evidence that is not relevant is not admissible. Ill. R. Evid. 402 (eff. Jan 1, 2011). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ill. R. Evid. 403 (eff. Jan 1, 2011).

¶ 35    Defendant argues that the fact that K.H. took photographs to send to a boy on Facebook was highly relevant in explaining why the photographs were on defendant's phone, and for potentially undermining the believability of K.H.'s testimony. Defendant directs this court to *People v. Mason*, 219 Ill. App. 3d 76 (1991), in support of this argument.

¶ 36    In *Mason*, the defendant was convicted of two counts of aggravated criminal sexual assault. *Mason*, 219 Ill. App. 3d at77. The alleged victim was seven years old and the defendant was her babysitter. *Id.* Relevant to the facts of the present appeal, the trial court refused evidence that the victim had viewed sexually explicit videos on the theory that it was barred by the rape-shield statute. *Id*. at 78. During the defendant's trial, a police psychologist testified as an expert for the State and said that "inappropriate knowledge by a child of sexual activity, inappropriate play or activity with other children, and inappropriate sexual behavior with adults are behavioral characteristics of sexually abused children." *Id.*

¶ 37    In reversing the defendant's conviction on appeal, the appellate court found that the rape-shield statute did not apply to the introduction of evidence concerning the curious minor victim's

viewing of pornographic videos because (1) it was not evidence of "prior sexual activity" or "reputation"; and (2) the policies of the rape-shield statute to prevent harassment and humiliation of victims and encourage victims to report sexual offenses cannot justify denying a defendant the right to refute evidence which tends to establish sexual abuse took place. *Id*. at 78. The State's expert, by testifying that sexual knowledge was evidence of abuse, made the minor victim's other sources of knowledge of sexual conduct relevant. *Id*. at 78-79. "The observation of sexually explicit videotapes *** could well justify a fact finder's determination that a child's acting out could have been caused from her observations. When knowledge of sexual activities becomes an issue, as in the present case, the rape-shield statute does not apply, and due process precludes its application." *Id*. at 79.

¶ 38    Returning to the present appeal, counts 5 and 6 charged defendant with child pornography under section 11-20.1(a)(1)(vii) of the Criminal Code which states

"(a) A person commits child pornography who:

(1) films, videotapes, photographs, or otherwise depicts or portrays by means of any similar visual medium or reproduction or depicts by computer any child whom he or she knows or reasonably should know to be under the age of 18 or any person with a severe or profound intellectual disability where such child or person with a severe or profound intellectual disability is:

(vii) depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed or transparently clothed genitals, pubic area, buttocks, or, if such person is female, a fully or partially developed breast of the child or other person[.]" 720 ILCS 5/11-20.1(a)(1)(vii) (West 2016).

Counts 7 through 12 charged defendant with child pornography under section 11-20.1(a)(6) of the Criminal Code which states

> (a) A person commits child pornography who:
>
> (6) with knowledge of the nature or content thereof, possesses any film, videotape, photograph or other similar visual reproduction or depiction by computer of any child or person with a severe or profound intellectual disability whom the person knows or reasonably should know to be under the age of 18 or to be a person with a severe or profound intellectual disability, engaged in any activity described in subparagraphs (i) through (vii) of paragraph (1) of this subsection[.]" 720 ILCS 5/11-20.1(a)(6) (West 2016).

Unlike in *Mason*, evidence as to whether K.H. took the photos found on defendant's phone to send to a boy on Facebook were not relevant to the above-charged offenses. A trial court's decision to bar testimony to a matter collateral to the charged conduct as irrelevant does not violate defendant's constitutional right to confront his accuser. See *Santos*, 211 Ill. 2d at 407 ("precluding a defendant in a sexual assault trial from impeaching a complaining witness on a collateral matter does not contravene the constitution"). The trial court found evidence that K.H. took the photos to send to a third party irrelevant because "it's the mere possession of the pictures which is the issue." We find no abuse of discretion in the trial court's reliance on the rape-shield statute to bar cross-examination of K.H. about matters not relevant to defendant's charged conduct.

¶ 39    We now move to defendant's second contention in this appeal. Defendant contends the State engaged in prosecutorial misconduct when it allowed the trial court to read a consciousness of guilt other-crimes limiting instruction to the jury before M.B.'s testimony, despite knowing that it did not intend to elicit such evidence from her testimony. Defendant likens the prosecutorial

- 17 -

misconduct complained of in this appeal to State misconduct during opening statements where a prosecutor makes claims that it has no intention of proving. See *People v. Kliner*, 185 Ill. 2d 81, 127 (1998) ("The purpose of an opening statement is to apprise the jury of what each party expects the evidence to prove"); see also *People v. Crawford*, 2013 IL App (1st) 100310, ¶ 138 ("the State may not claim anything in its opening statement that it cannot or does not intend to prove").

¶ 40    Defendant concedes that this issue was not preserved as his trial counsel did not object to the State's alleged misconduct. Indeed, defendant's trial counsel suggested that the trial court issue the given curative instruction following the State's failure to elicit other-crimes evidence through M.B.'s testimony. However, he asks this court to review the matter for plain error.

¶ 41    Plain error occurs where the defendant shows a clear or obvious error, and that either (1) the evidence is closely balanced, or (2) the error is of such magnitude that the defendant is denied the right to a fair trial and remedying the error is necessary to preserve the integrity of the judicial process. *People v. Johnson,* 208 Ill. 2d 53, 64 (2003). A reviewing court typically undertakes plain-error analysis by first determining whether error occurred at all. *People v. Sargent*, 239 Ill. 2d 166, 189 (2010). If error is found, the court then proceeds to consider whether either of the two prongs of the plain-error doctrine have been satisfied. *Sargent*, 239 Ill. 2d at 189-90. Under both prongs, the burden of persuasion rests with the defendant. *Id*. at 190. Defendant frames his contention here under the first-prong.

¶ 42    Defendant argues *People v. Bunning*, 298 Ill. App. 3d 725 (1998), to be instructive to the issue here. In *Bunning*, the defendant was found guilty of armed robbery and sentenced to 24 years' imprisonment. *Bunning*, 298 Ill. App. 3d at 726. Among the defendant's contentions on appeal, he

argued that he was denied a fair trial when the prosecutor, during opening statements, told the jury that it intended to call two witnesses, but failed to call them to testify. *Id*. at 727.

¶ 43    Although the trial court issued a curative instruction on the State's opening statements, the appellate court noted that a curative instruction alone is but a factor to be considered in determining prejudice to the defendant. *Id*. at 729; citing *People v. Flax*, 255 Ill. App. 3d 103, 109 (1993). Regarding the State's reference to the two witnesses who were to be called to corroborate another witness's testimony that the defendant bragged about committing the robbery, the State contended that "presumably" the witnesses were not called because of concerns that they would invoke their fifth amendment rights. *Id*. at 730. The court noted that the record did not support the State's contention. *Id*. The *Bunning* court held it was error for the prosecutor, during opening statement, to inform the jury of "facts" about which no evidence was presented. *Id*. at 731.

¶ 44    We do not find *Bunning* instructive on the issue before us. In the present appeal, the State did not allude to any evidence in its opening statement that it later failed to produce. The real question before us is whether the record shows that the State prosecutor acted deliberately in failing to elicit the other-crimes evidence after the trial court issued its limiting instruction, and whether that failure resulted in prejudice to the defendant.

¶ 45    Even if we are to accept the notion that the State acted deliberately, the trial court's subsequent instruction was sufficient to cure any prejudice to defendant. Defense counsel did not object following M.B.'s testimony. The record indicates that the trial court brought up the State's failure to introduce other-crimes evidence when discussing other matters outside the presence of the jury. Defense counsel asked for a curative instruction and the trial court gave one. See *supra* ¶ 18. Now defendant asks this court to find error with the trial court's instruction because it did not

tell "the jury that it could not consider the trial court's allusion to other-crimes evidence when determining guilt." The jury was ordered "to disregard [the other-crimes limiting] instruction as no such evidence was presented." Instructions calling the jury to disregard the court's prior mention of other-crimes evidence remedies any claim of error. See *People v. Hall*, 194 Ill. 2d 305, 345-46 (2000).

¶ 46    In his reply brief, as well as during oral argument before this court, defendant argues that the prosecutor's comments that M.B.'s testimony corroborated that of K.H. was improper (see *supra* ¶ 24) as it gave the jury free rein to speculate on defendant's other-crimes indicative of a consciousness of guilt. However, this argument is belied by the evidence presented at trial.

¶ 47    It is well settled that prosecutors are afforded wide latitude in closing argument, and even improper remarks do not merit reversal unless they result in substantial prejudice to the defendant. *People v. Burman*, 2013 IL App (2d) 110807, ¶ 25. During closing argument, the prosecutor may properly comment on the evidence presented or reasonable inferences drawn from that evidence, respond to comments made by defense counsel that invite response, and comment on the credibility of witnesses. *Burman*, 2013 IL App (2d) at ¶ 25. In reviewing whether comments made during closing argument are proper, we must review the closing argument in its entirety and view remarks in context. *Id*.

¶ 48    We recounted M.B.'s testimony above. *Supra* ¶ 15, 16. Her testimony that defendant acted oddly when discovered alone with K.H., and her concern that they emerged from the bathroom together when there was no reason for defendant, a grown man, to be alone in a bathroom with a 14-year-old girl, supported K.H.'s testimony regarding the acts defendant committed with her. The evidence presented supports the jury making a reasonable inference that defendant was using these

opportunities alone with K.H. to commit the charged crimes. Even though the State did not offer any evidence following the trial court's issuance of the other-crimes limiting instruction to show defendant's consciousness of guilt, the State prosecutor's closing argument comments of which defendant now complains were fully supported by the evidence that was presented at trial.

¶ 49 Further, defense counsel did not move for mistrial, formally object, or raise any issue to any weakness in the curative instruction that defendant now alleges was insufficient on appeal. Any alleged insufficiency with the curative instruction has been waived. *People v. Tannenbaum*, 82 Ill. 2d 177, 180-81 (1980); *People v. Hughes*, 205 Ill. App. 3d 79, 84 (1990). But waiver notwithstanding, because defendant's claim of error fails under the foregoing analysis, he cannot succeed on his claim of first-prong plain error. *People v. Eppinger*, 2013 IL 114121, ¶ 42.

¶ 50 Defendant framed the above contentions as combined error in his brief presented to this court. However, as we find no error on either of defendant's raised contentions, we need not address his arguments concerning combined error.

¶ 51 III. CONCLUSION

¶ 52 For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

¶ 53 Affirmed.