NOTICE
Decision filed 07/19/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220711-U

NO. 5-22-0711

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 20-CF-117 |
| | ) | |
| CODY T. RECTOR, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction is affirmed where the State did not commit plain error during rebuttal closing argument; the trial court's restitution order is remanded for the issuance of an amended restitution order.

¶ 2    The defendant, Cody T. Rector, appeals his conviction following a jury trial in the circuit court of Jefferson County for predatory criminal sexual assault and two counts of child pornography. On appeal, defendant argues that the State committed plain error by shifting the burden of proof to the defense during rebuttal closing argument. Defendant also contends that the trial court's restitution order fails to comply with the requirements of *People v. Auler*, 250 Ill. App. 3d 1095 (5th Dist. 1993). For the following reasons, we affirm defendant's convictions but remand for the issuance of an amended restitution order.

1

I. BACKGROUND

¶ 4      The State charged defendant by information with two counts of predatory criminal sexual assault of a child, in violation of section 11-1.40(a)(1) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-1.40(a)(1) (West 2020)); seven counts of child pornography, in violation of sections 11-20.1(a)(1), 11-20.1(a)(2), and 11-20.1(a)(6) of the Code (*id.* § 11-20.1(a)(1), (a)(2), (a)(6)); and one count of felony possession of a firearm without a FOID card, in violation of section 2(a)(1) of the Firearm Owners Identification Card Act (430 ILCS 65/2(a)(1) (West 2020)). Count I charged defendant with touching the vagina of a minor, E.I., under the age of 13. Count II charged defendant with licking the vagina of E.I. Counts III and IV charged defendant with child pornography for taking and disseminating photos of E.I. The additional five counts of child pornography alleged defendant possessed pornographic photos of unknown females under the age of 18 and count X alleges defendant possessed a firearm without a valid FOID card. Count X was severed before trial and later dismissed.

¶ 5      Following a jury trial, on June 23, 2022, defendant was convicted on counts I, III and IV. Defendant was found not guilty on counts II, V, VI, VII, VIII, and IX. The trial court sentenced defendant to three consecutive terms totaling 75 years in the Illinois Department of Corrections (IDOC) with 3 years mandatory supervised release (MSR).

¶ 6      Relevant to this appeal, the following facts were adduced at trial. On March 4, 2020, a chat website called Flingster.com received a report flagging a picture as possible child pornography. Flingster forwarded the complaint to the National Center for Missing and Exploited Children. The complaint was forwarded to an area task force, and on April 28, 2020, the case was assigned to Captain Detective Bobby Wallace with the Jefferson County Sheriff's Department, who was a member of the Illinois Attorney General's Internet Crimes Against Children Task Force. The

flagged photograph depicted a young girl on a bed, with her nightgown pulled up to expose her bare buttocks; it appeared that her underwear had been removed. The Internet Protocol address (IP address) associated with the file was registered to Spectrum Communications in the Mt. Vernon, Illinois, area. Wallace obtained a search warrant to obtain information from Spectrum about the holder of the IP address which revealed that at the date and time of the complaint, the IP address was assigned to the account of defendant at his home in Mt. Vernon. Based on this information, Wallace and other officers obtained and executed a search warrant at defendant's home for the seizure and analysis of electronic devices or electronic storage devices.

¶ 7      Wallace executed the search warrant on May 7, 2020. When Wallace knocked on the door, Alyssa Wolf (defendant's former girlfriend and E.I.'s mother) answered. When asked if defendant was home, Alyssa said yes and went inside to get him. Alyssa told defendant that the police were at the door, and defendant told Alyssa to say he was not home. Alyssa refused. Defendant went to the door, and Wallace informed defendant about the warrant. Defendant, Alyssa, and E.I. gathered in the living room while law enforcement executed the warrant. Law enforcement seized defendant's Apple iPhone, defendant's Apple desktop computer, and other phones and tablets. Wallace testified that Alyssa fully cooperated in the investigation.

¶ 8      Both defendant and Alyssa gave recorded statements at the sheriff's office later that day. In her noncustodial interview, Alyssa stated she had never heard of Flingster and had never been on it. When Wallace showed her the picture that someone at her home posted on Flingster, Alyssa identified the child in the picture as E.I. Alyssa said she did not take the picture, had never seen it before, and that she did not use defendant's computer. Alyssa further stated that defendant was laid off from his job with a school bus company and that he babysat E.I. while she worked.

3

¶ 9    In her interview, Alyssa told Wallace that recently, E.I. said she had a rash. E.I. told Alyssa that defendant put cream on her, and that he also put cream on himself. When Alyssa asked E.I. where on himself defendant put the cream, E.I. said, "his thingy" and pointed down. Defendant was not home at the time E.I. made these statements, so Alyssa called him. Defendant denied putting cream on E.I. Defendant told Alyssa that he put Vaseline on himself in the living room due to chafing and that E.I. must have seen him. Alyssa examined E.I., but she did not find either cream or a rash. Alyssa again asked E.I. if defendant put cream on her. E.I. responded that she was lying about defendant putting cream on her, but that he did put it on himself.

¶ 10    In defendant's custodial interview, defendant admitted having been on Flingster, but he said he could not recall the last time he was on it or whether he accessed it from his phone or his computer. Wallace showed defendant the picture from Flingster; defendant said the subject of the photograph looked like E.I. Initially, defendant stated the bedroom was E.I.'s, but later stated the room was his, but that E.I. never slept on his bed.

¶ 11    Defendant initially denied taking the photograph. When asked if the picture would be found on his phone, defendant said no. When asked if his answer to whether he took the picture was yes, no, or that he did not remember, defendant paused, stammered, and then said: "I wanna say I—I—I didn't." Defendant then equivocated on whether that was his "official answer, because, I mean, maybe I did and was like, hey, she—why'd she fall asleep like this or what the fuck, but I—I highly doubt I was doing anything like that." Later in the interview, when asked again if he took the picture, defendant answered, "To my knowledge, no." Defendant said that if the picture was later found on his phone, it was Alyssa who had taken it and posted it, or alternatively, he speculated he was being set up and that he allowed his friends to use his computer and his phone. When Wallace told defendant his phone would be examined, defendant stated he did not remember

4

taking the picture, but the only way he would have taken it would be to show it to Alyssa, but that he did not remember doing so.

¶ 12    When Wallace asked about the Vaseline incident, defendant stated that E.I. walked into the bedroom while he was masturbating, but to his knowledge, she never saw anything. He added that he was not very cautious with her being around. He denied putting cream or lotion on E.I., but stated he put cream or lotion between his own legs when he was in the living room.

¶ 13    Two days after his interview, while in custody, defendant exchanged a series of texts with Alyssa via the jail's text messaging service. In the messages, defendant said E.I. fell asleep "in a weird way" and that he was going to send Alyssa a picture, but he was "afraid it could be looked at in a wrong way." In the messages, defendant speculated the picture recovered by law enforcement could have been that picture. Defendant also theorized that E.I. could have been positioned on his bed in that manner while he was starting her bath, and that he had been walking around on his phone while livestreaming.

¶ 14    On May 8, 2020, five-year-old E.I. was interviewed at The Amy Schulz Child Advocacy Center in Mt. Vernon, Illinois, by forensic interviewer Wendi Zobrist. Prior to the interview, law enforcement gave Zobrist a brief report that stated a picture of E.I. had been put on an adult website. The report said nothing about sexual molestation. During the interview, E.I. told Zobrist that sometimes defendant watches "bad stuff" on the TV while cleaning his legs. When asked to point to where defendant was cleaning, E.I. said, "[h]ere," and pointed to her crotch. E.I. also told Zobrist that defendant sometimes "cleaned his legs" in her room while E.I. was in the room and while Alyssa was not home. Zobrist asked E.I. if she ever talked to her mom about defendant cleaning his legs, and E.I. answered no because defendant told her it was a secret. Toward the end

5

of the first interview, when Zobrist asked E.I. to confirm that she had touched defendant's "leg," E.I. said that was a joke.

¶ 15    Zobrist testified that sometimes after a forensic interview, a child makes additional disclosures, and that in such cases, a second interview is conducted. After her initial interview, E.I. made additional disclosures to her grandfather, and as such, Zobrist conducted a second interview with E.I. on May 22, 2020. In the second interview, E.I. disclosed that defendant touched her vaginal area, both inside and outside, while defendant was unclothed and in E.I.'s room. E.I. further disclosed that she saw slime come out of defendant's "leg." Zobrist reminded E.I. that at the first interview, E.I. told Zobrist that she was joking about touching defendant. When asked why it was a joke, E.I. said it was funny and that she loves her jokes and wants to keep them. Zobrist testified that when E.I. said it was a joke, she interpreted this as E.I. wanting the interviews to end.

¶ 16    The forensic analysis of the devices seized during the execution of the search warrant did not reveal the picture of E.I. on defendant's bed, but other child pornography images were found on his iPhone and desktop computer. Wallace, an expert in computer analysis and forensic technology, testified that the image of E.I. could have been deleted from the phone or the computer prior to the seizure.

¶ 17    In August of 2021, more than a year after defendant's arrest, E.I. made an unprompted disclosure to her mother and told her that defendant "licked her hoo-ha." Alyssa reported this statement to Wallace. E.I. was not reinterviewed at the Amy Center after this disclosure, as Wallace did not believe this was substantially different from the sexual activity that E.I. had already disclosed.

¶ 18    At the jury trial, seven-year-old E.I. testified that an example of a "good touch" is a hug, and an example of a "bad touch" is if someone touched your "hoo-ha." When asked to define that

6

term, she pointed at her private part. She further stated that nobody should touch that part, or a girl's "butt[ ]" or [b]oobs." When asked if anyone had ever touched those parts of her body, E.I. named defendant. When asked what he touched her with, E.I. stated "[h]is fingers inside and outside, and he licked my hoo-ha." When asked where she was when this occurred, she stated she was in defendant's bedroom and identified a picture of his room.

¶ 19    Both E.I. and Alyssa testified that E.I. told Alyssa that defendant licked and touched her "hoo-ha," and Alyssa testified that E.I. told her that defendant put cream on her and himself. E.I. testified that she told her mother that she lied about this, because defendant denied it on the phone. E.I. thought her mother did not believe her. Alyssa testified that E.I. did not tell her she was lying about defendant putting his finger inside her vagina and licking her vagina.

¶ 20    Wallace testified that Flingster is a web-based chat site that allows livestreaming if a person's camera is activated. Defendant's desktop computer had a built-in web camera, and Wallace found evidence that defendant accessed Flingster from that computer. Wallace testified that although Flingster does not allow a user to upload pictures, a person could get an image onto Flingster using multiple methods—screensharing, screen captures, or holding another device displaying the image up to the web camera. Wallace did not know specifically how the image of E.I. was transmitted to Flingster.

¶ 21    After the presentation of the evidence, the State's rebuttal closing argument concluded as follows:

> "Ladies and gentlemen, the totality of everything you've seen here, is there anything that has convinced you that he has not touched that little girl inappropriately; that he has not touched her vagina; that he has not licked her vagina; that he has not jacked off in front of her; that he has not had slime coming out of his penis in her presence? Because if you think he did that, if you believe beyond a reasonable doubt that he possessed that material and he touched that little girl, please return a verdict of guilty. Thank you."

¶ 22    The jury instructions provided to the jury included, in part:

7

"The defendant is presumed to be innocent of the charges against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all evidence in this case you are convinced beyond a reasonable doubt that he is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State through the case. The defendant is not required to prove his innocence."

¶ 23    After approximately 3½ hours of deliberation, the jury found defendant guilty of predatory criminal sexual assault based on touching E.I.'s vagina; not guilty on the count of predatory criminal sexual assault based on licking E.I.'s vagina; guilty on the two counts of child pornography against E.I.; and not guilty on the five additional counts of child pornography alleging possession of lewd pictures.

¶ 24    Defendant was arrested and first charged in May 2020. He was released in June 2021 prior to trial upon payment of $25,000 bond by his family. At sentencing, the State asked for the court costs and fees to be satisfied from the bond money and for the remainder of the bond money to be held for counseling for E.I. The State explained that E.I. receives weekly counseling sessions at a cost of $150 per hour. The State offered that the cost of this counseling was not yet determined, but explained its understanding that the bills would be submitted to the circuit clerk's office for payment. Further, the State suggested that this arrangement could continue until five years after defendant's release from prison. On the day after sentencing, a payment status information sheet was filed, reflecting that $5064 in fees and costs were paid in full and that defendant had no money due. A docket entry for that day showed the remaining posted bond amount was $19,936. The docket entry stated that this money was not to be refunded and would be held to pay for the victim's mental health counseling.

¶ 25    The trial court sentenced defendant to mandatory consecutive terms totaling 75 years in IDOC with 3 years' MSR. The court noted that defendant would serve over 51 years of real time

8

with credit for time served. The court did not impose a fine but imposed all mandatory costs and assessments. The court also ordered that defendant's bail bond money be held and used to pay for counseling for E.I. "as allowed by statute." The court's financial sentencing order provided: "Restitution—Mental Health Counseling $TBD." On July 22, 2022, defendant filed a posttrial motion for a new trial arguing (i) the evidence was insufficient to find defendant guilty beyond a reasonable doubt and (ii) defendant was not afforded a fair trial due to the prosecutor's statements regarding defendant having the ability to access pornographic files that could only be accessed by use of specialized software. That motion was denied on August 18, 2022. Also on August 18, 2022, defendant filed his motion to reconsider sentence, arguing defendant's sentence was excessive and that the court abused its discretion in sentencing defendant. That motion was denied on October 4, 2022. This timely appeal followed.

¶ 26                                II. ANALYSIS

¶ 27    On appeal, defendant argues that the State improperly shifted the burden of proof to the defense in rebuttal closing argument. Additionally, defendant argues the trial court abused its discretion in ordering the balance of defendant's bond money to be held to pay for the victim's counseling because its restitution order did not set out the required details. Finally, defendant asks this court to remand for a new hearing on the issue of restitution. For the reasons that follow, we affirm the defendant's convictions but remand for the issuance of an amended restitution order.

¶ 28    First, we address defendant's argument that the State improperly shifted the burden of proof to him during rebuttal closing argument. Defendant did not object to the error at trial, nor did he raise the error in a posttrial motion. As such, and as he concedes, the issue is forfeited, and is only reviewable for plain error. See *People v. Williams*, 2022 IL 126918. "To preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial

and raise the error in a posttrial motion." *People v. Sebby*, 2017 IL 119445, ¶ 48 (citing *People v. Belknap*, 2014 IL 117094, ¶ 66); see generally *People v. Enoch*, 122 Ill. 2d 176 (1988); *People v. Ford*, 19 Ill. 2d 466 (1960) ("An accused may not sit idly by and allow irregular proceedings to occur without objection and afterwards seek to reverse his conviction by reason of those same irregularities."). Failure to do either results in forfeiture of such review, but the forfeiture may be excused when the error is "plain." *Sebby*, 2017 IL 119445, ¶ 48.

¶ 29    Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) memorializes the plain-error doctrine:

> "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."

The plain-error doctrine does not create a "general saving clause" to allow defendants to escape the consequences of their nonfeasance. *People v. Herron*, 215 Ill. 2d 167, 177 (2005). Instead, it offers a narrow exception to the rule of procedural default for unpreserved errors. *People v. Jackson*, 2020 IL 124112, ¶ 81. Whether there is plain error is a question of law, which we review *de novo*. *People v. McLaurin*, 235 Ill. 2d 478, 485 (2009).

¶ 30    "[T]he defendant cannot obtain relief on an unpreserved error under the plain-error doctrine if he would not have been entitled to relief on the same error if preserved." *Williams*, 2022 IL 126918, ¶ 49. The Illinois Supreme Court has identified two instances in which a reviewing court can consider a forfeited but still clear and obvious error: (1) when "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) when "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's

10

trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) (citing *Herron*, 215 Ill. 2d at 186-87).

¶ 31 The initial step under either prong of the plain-error doctrine is to determine whether there was a clear or obvious error at trial. *Id*. Therefore, "the threshold inquiry is whether there was an error at all." *Williams*, 2022 IL 126918, ¶ 49 (citing *Jackson*, 2020 IL 124112, ¶ 81).

¶ 32 Here, defendant seeks review under the second prong of the plain-error doctrine. Under the second prong of the plain-error doctrine, a reviewing court must decide whether the defendant has shown that the error was so serious it affected the fairness of the trial and challenged the integrity of the judicial process. *Herron*, 215 Ill. 2d at 187. If the defendant meets that burden, "[p]rejudice *** is presumed because of the importance of the right involved." *Id.* "[C]omments in prosecutorial closing arguments will rarely constitute second-prong plain error because the vast majority of such comments generally do not undermine basic protections afforded to criminal defendants." *Williams*, 2022 IL 126918, ¶ 56.

¶ 33 The prosecution has wide latitude in making closing arguments and is permitted to comment on the evidence and any fair, reasonable inference it yields. *People v. Glasper*, 234 Ill. 2d 173, 204 (2009) (citing *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005)). A closing argument must be viewed in its entirety, and challenged remarks must be viewed in the context of the entire argument as well as the trial court's instructions that arguments are not evidence, that the State bears the burden of proving the defendant's guilt beyond a reasonable doubt, and that the defendant need not present any evidence. *Id*. An improper closing comment is reversible error only if it substantially prejudiced the defendant's right to a fair trial. *People v. Euell*, 2012 IL App (2d) 101130, ¶ 22.

11

¶ 34    On appeal, defendant characterizes the State's rebuttal closing argument as burden-shifting. Defendant argues the prosecutor required the defense to convince the jury that he was innocent and that he did not commit the crimes. The State disagrees with defendant's characterization of the rebuttal closing argument. The State counters that the prosecutor did not allege the defendant had the burden of producing evidence of his innocence and that the prosecutor did not argue that defendant failed to produce such evidence. We agree with the State.

¶ 35    In the case before us, the prosecutor did not state that defendant had the burden of producing evidence of his innocence, and the prosecutor did not argue that he failed to produce such evidence. A closing argument must be viewed in its entirety. See *Glasper*, 234 Ill. 2d at 204. Looking at the rebuttal closing argument as a whole, the prosecutor asked the jury whether it was convinced of his innocence based on the "totality of everything you've seen here," not based on the evidence that defendant did or did not produce. Immediately following the contested comment, the prosecutor reminded the jury of the State's burden of proof by stating that the jury should convict defendant if it believed "beyond a reasonable doubt" that he committed the charged crimes.

¶ 36    Further, the court repeatedly and explicitly instructed the jury that the burden of proving defendant's guilt rested with the State, and that the State had to meet that burden beyond a reasonable doubt in order for the jury to convict him. In jury selection, the court ascertained that each juror understood and accepted the principles set forth in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) and further ascertained that each juror would apply the law provided by the court, without regard to personal feelings. Where a jury is repeatedly properly instructed on the burden of proof, a contested comment by the State in rebuttal closing argument is not reversible error. See *People v. Mudd*, 2022 IL 126830, ¶¶ 45-46.

¶ 37    More importantly, we further find that defendant did not suffer substantial prejudice as a result of this challenged comment. First, there was significant, credible evidence at trial that tied defendant to these crimes. Second, the court repeatedly and explicitly instructed the jury that the burden of proving defendant's guilt rested with the State, and that the State had to meet that burden beyond a reasonable doubt in order for the jury to convict him. Therefore, where there is no error and where the court properly instructed the jury, defendant has not met his threshold plain-error burden of showing that the State clearly and obviously shifted the burden to him.

¶ 38    Even if we were to find that defendant met the initial step of the plain-error doctrine, defendant has not shown that the error was so serious it affected the fairness of the trial and challenged the integrity of the judicial process. Improper burden-shifting comments are not necessarily second-prong plain error. See *People v. Bell*, 2020 IL App (4th) 170804, ¶¶ 137-41. The Fourth District found in *Bell*, similar to the case at hand, that improper burden-shifting comments were not second-prong plain error where the prosecution did not directly state that the defendant had the burden to introduce evidence of innocence, that the State's comments primarily concerned the credibility of the defendant's theory in light of the evidence presented, and the jury was properly instructed. *Id.* The Second District has also held that improper burden-shifting comments were not second-prong plain error where the prosecution did not directly state that the defendant had the burden to support his theory. *Euell*, 2012 IL App (2d) 101130, ¶¶ 20-23. In the case at hand, similar to *Bell* and *Euell*, the prosecution did not directly state that the defendant had the burden to introduce evidence of his innocence nor did the prosecution state that the defendant had the burden to support his theory. For the foregoing reasons, defendant has not met his burden of showing that the State's challenged comment, even if improper, affected the fairness of the trial and challenged the integrity of the judicial process, or that it was so inflammatory or flagrant that

13

he was denied a fair trial. For these reasons, the State did not commit plain error in his rebuttal closing argument. As such, defendant's convictions are affirmed.

¶ 39    Next, defendant argues that the trial court's restitution order is inadequate under the restitution statute (730 ILCS 5/5-5-6(e) (West 2020)). Defendant asks this court to remand the matter to the trial court to correct the order. Defendant argues the restitution order for future counseling expenses is based on speculation and does not comply with the requirements of *People v. Auler*, 250 Ill. App. 3d 1095, 1101 (5th Dist. 1993).

¶ 40    Defendant was arrested and first charged in May 2020. He was released in June 2021 prior to trial upon payment of $25,000 bond by his family. At sentencing, the State asked for the court costs and fees to be satisfied from the bond money and for the remainder of the bond money to be held for counseling for E.I. The State explained that E.I. receives weekly counseling sessions at a cost of $150 per hour. The State offered that the cost of this counseling would be undetermined, but explained its understanding that the bills would be submitted to the circuit clerk's office, which would pay them, and further told the court that this arrangement could continue until five years after defendant's release from prison. On the day after sentencing, a payment status information sheet was filed, reflecting that $5064 in fees and costs were paid in full and that defendant had no money due. A docket entry for that day showed the remaining posted bond amount was $19,936. The docket entry stated that this money was not to be refunded and would be held to pay for the victim's mental health counseling.

¶ 41    A circuit court's determination on restitution will not be reversed on appeal absent an abuse of discretion. *People v. Cameron*, 2012 IL App (3d) 110020, ¶ 35. Where the issue is whether a restitution order is authorized by statute, the issue is one of law, subject to a *de novo* standard of review. *Id.* Defendant concedes that the trial court was authorized to issue a restitution order for

14

E.I.'s counseling expenses, and that the trial court was authorized to order the balance of defendant's cash bond be used for that purpose. As such, we review the trial court's restitution order for an abuse of discretion.

¶ 42    Section 5-5-6 of the Unified Code of Corrections permits an order of restitution for prospective counseling expenses in sex abuse cases. 730 ILCS 5/5-5-6 (West 2020). When a court orders restitution for future counseling expenses, the order must include a maximum dollar amount, the time frame for counseling and proof of expenses, that the court services or probation department will administer the restitution payment, that either party may petition the court if a dispute arises, and a date when any bond monies held for use for restitution will be remitted to the defendant. *Auler*, 250 Ill. App. 3d at 1101.

¶ 43    In defendant's financial sentencing order, entered August 18, 2022, the court entered a restitution amount of "TBD." Defendant does not dispute that the trial court has the discretion to order restitution from his cash bond; however, defendant asserts the trial court's restitution order does not adhere to the statutory requirements set forth in section 5-5-6 of the Unified Code of Corrections. Specifically, defendant asserts the court based the order for future counseling expenses on speculation, did not include a maximum dollar amount, the time frame for counseling and proof of expenses, that the court services or probation department will administer the restitution payment, that either party may petition the court if a dispute arises, and a date when any bond monies held for use for restitution will be remitted to the defendant. In response, the State argues that the restitution award had a sufficient factual basis and was sufficiently definite in most respects. Additionally, the State argues the trial court's oral pronouncement controls, and that it provided adequate certainty on that issue. We reject the State's argument and remand to the trial court for the issuance of a modified restitution order.

15

¶ 44    In the sentencing context, it is well settled that a written order is evidence of the trial court's judgment, but the court's oral pronouncement is the judgment of the court. *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 87. When the court's oral pronouncement conflicts with its written order, the oral pronouncement controls. *Id.* We agree with defendant that we cannot read the trial court's written order in conjunction with its oral pronouncement and determine the conditions of the restitution order. Additionally, the State makes no argument on appeal regarding the trial court's failure to include a method for resolving disputes in its restitution order, and instead asks this court to amend the order to include that provision. We decline to do so.

¶ 45    Where a restitution order is not sufficiently clear and definite, the proper remedy is for the reviewing court to remand the cause for the trial court to provide any missing conditions of the restitution award. See *Auler*, 250 Ill. App. 3d at 1101. We agree with defendant that the trial court did not issue a clear and definite restitution order and the matter should be remanded to the trial court for the issuance of a modified restitution order.

¶ 46                                III. CONCLUSION

¶ 47    For the reasons stated, defendant's Jefferson County convictions are affirmed. However, we remand this matter for the issuance of a modified restitution order, where the trial court is directed to specify the maximum amount, duration, and other conditions of the restitution order.

¶ 48    Affirmed and remanded with directions.

16